The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you, Shirley. Welcome, everyone. Just a few reminders about this virtual oral argument. Please recall that you should mute yourself when you're not the one speaking, but you should unmute yourself when you are the one speaking. Please also recall that you should not be video or audio taping this or taking pictures and you should conduct yourself in the same fashion as you would if you were in the Wisdom Courthouse. Please also recall that when you refer to the record, we appreciate a record site and of course, rebuttal is for rebuttal only. With that, we will proceed to case 20-50667, Texas Democratic Party v. Hughes, and we'll begin with Mr. Frederick. Thank you, Judge Haynes. May it please the court, Texas does not have online voter registration. Plaintiffs think it should, so they want to force voter registrars to accept applications prepared online and submitted by a third party organization. But instead of suing voter registrars, they sued the secretary of state who doesn't accept or process voter registration applications. The plaintiffs sued the wrong defendant and they cannot invoke Ex parte Young's narrow exception to sovereign immunity for two primary reasons. First, the secretary does not have a particular duty to enforce voter registration requirements. And two, the secretary has not demonstrated a willingness to enforce them here. So I want to start with the particular duty point. As this court has held, this requires a section by section analysis. And here, the question is the submission of voter registration applications. If he's so out of the picture, why not just withdraw that press release that caused people to change what they were doing? Just withdraw it. Then we've moved the whole thing. Why not do that? Well, the press release was issued by the previous secretary of state in 2018. And so I think, I guess I have to... Even more so, why shouldn't she withdraw it? She didn't even want to issue it, per se. I'm not following that press release. That would end this whole case. So if she's so distant from it, why not distance herself? So I guess I would have to respectfully question the premise that the press release caused anybody to change their behavior. I don't believe that has been pleaded. And if you look at the press release itself, it's cited in their complaint with a link. It appears at ROA 289. That press release, they call it the wet signature rule, but that press release does not purport to announce a rule. And it doesn't say anything about wet signatures. What the press release says is Texas does not have online voter registration. And I advise voters to be very careful if a third party represents to you that you can provide personal information and they'll complete an online registration for you. And- I mean, in the pleading, it says the secretary's announcement created confusion among county voter registrars and voters who were forced to reconcile the conflict in the day after Travis said they would process and then they backed off. So I mean, they did plead that. And again, that may be totally false, but I mean, we're not at that stage yet. We're having to accept what's pleaded. So again, I'm back to this seems to be focused almost entirely on the press release. And so I'm like, you know, why don't I just take out there or just say I'm not following that press release or I don't agree with that press release or that press release is dead. And then when we move this case, because the statute itself doesn't say anything about wet signatures. So we don't have a statutory attack here. We have sort of a press release attack. I agree with that. The statute doesn't say anything. I think the right way to approach it is, as this court did in T.D.P. versus Abbott. Because the question, of course, is, is the secretary a proper defendant under ex parte young? And so I think you have to look at whether the secretary is charged with enforcement of the registration requirements, whether they come from the statute or whether they come from this alleged wet signature rule. And the answer is no on both counts. The statutes specifically charge voter registrars in the counties and by the plaintiff's own pleadings, they say at R.O.A. 229 that enforcement of the wet signature rule will be left entirely to registrar's unfettered discretion. So either way you put it, it doesn't matter. The fact is, as they've pleaded and as the law provides, it's voter registrars who are charged with enforcement. So what you're saying is that the voter registrars can accept online registration. So kind of this case is kind of irrelevant because they can accept it. It doesn't seem consistent with what the secretary of state, the prior one, said. And this one seems to be living with where she would have withdrawn it. I wouldn't agree with the statement that they necessarily can accept online registrations. I mean, I think the fact is that Texas does not provide for online voter registration. But the point relevant to the question here is that the secretary's press release didn't bind anyone because it was merely advice. And if if she can't stop them, why don't they just go back to accepting online voter registration? And it's not allowed, but no one can do anything about it. That's what you're essentially saying. Well, I think the point that it is or isn't allowed. I'm just I'm going. I'm speaking for you and saying, where does that take us? Well, I think your question takes us to the critical point, which is this is something that's done by the county voter registrars. And that that's all that needs to be established here, because, as the court said in City of Austin versus Paxton, where one state actor agency is charged with enforcing the challenge provision and a different official is the named defendant. Our ex parte Young analysis ends and that's exactly where we are here. And so that ought to be the end of the analysis. And sovereign immunity bars this suit. OK, so to be clear, do you concede then that Travis County can accept online voter registration? I don't concede that, but I also don't concede that Travis, the Travis County clerk's behavior was determined by any kind of binding statement by the alleged at pages 227 and 228 of the record in their complaint. The timeline that they allege is the press release came out. The Travis County registrar said, I'm going to go ahead and accept these anyway. And then later he changed his mind. So all we know is that one registrar didn't think he was bound by the secretary. For some reason, he changed his mind. But the question really is who's enforcing it? And it's the registrars. So if I could move to the second part, even if there were some particular duty here, we have no demonstrated willingness to exercise any duty of enforcement because all we have, all they rely on is advice or guidance. And so we know that that does not carry the compulsion or constraint that is necessary to establish enforcement for purposes of ex parte Young. And so we think that's where this analysis ought to end. And before I run out of time, I do want to quickly mention that. The two points I've made are just positive, but there's a third issue that the court should be aware of, and that is the relief that they request is not permissible under ex parte Young, because here they don't just request prohibitory relief against the they do ask for that, but that would be ineffective because they want her to stop enforcing registration requirements in a particular way. She doesn't do that in the first place. But what they really seem to want is mandatory relief, requiring the secretary to take some affirmative action. This is at ROA 236 and 221 on 221. They say they want to, quote, instruct the secretary to inform all county registrars that voter registration applications should not be rejected for lack of a wet signature. That's impermissible under ex parte Young. As this court held in Mi Familia Vota, a federal court cannot enjoin a state official to promulgate a regulation or pass legislation. And so the Supreme Court has made a similar holding in Hawaii versus Gordon. So that kind of relief is simply not available either under ex parte Young or principles of federalism. So it's not available here. And of course, declaratory and prohibitory relief are not available because they're not effective against the secretary. One final point, the plaintiffs have now argued on appeal that the Civil Rights Act provision they rely on abrogates sovereign immunity. As we've explained in our reply brief, that's incorrect. Abrogation is determined by a three part test. They have only discussed the second part, which is that there's a potential source of that's not sufficient. And in fact, Congress has not unequivocally made a statement of intent to abrogate. And so that argument fails as well. If there are no further questions at this point, Mr. Frederick, if the secretary decided to enforce this no acceptance of digital signatures, would the secretary then have to request that the attorney general seek a what the course of action would be? That's right, Judge Graves, under Section 31.005, if the secretary thinks that a person is is abusing or abusing voting rights, then the only recourse that she has is to ask a different state official, the attorney general, to bring a lawsuit. And so we think that that's further evidence that she does not have enforcement authority. In that connection, would the attorney general be free to say, I'm not going to proceed with this lawsuit? I know you have a complaint that you've you've identified what you believe to be a violation, but I'm not going to proceed. I guess what I'm asking is if the secretary comes forward seeking a writ and the law requires that she approach the attorney general about doing that, does the attorney general have the discretion to say, no, I won't do. I believe that he does, Your Honor, at least under the terms of Section 31.005, because that only says that the secretary may seek enforcement. So I'm not aware of any provision of law that would require the attorney general to take action if, for whatever reason, he didn't think it was warranted. And so if there are no further questions at this point, I will yield the remainder of my opening time. Okay, you've saved time for rebuttal. We'll turn now to the plaintiff. Thank you, Judge Haynes. It may please the court. My name is Izoma Nkwonsa and I appear on behalf of the FLEs. This lawsuit challenges actions that the Secretary of State put into place shortly before the 2018 election, actions which violate federal law and place voters in a position where they may lose their ability to register to vote right before the election, or they may not be able to register at all. The Secretary of State's office instructed voters that their applications were incomplete because they lacked wet signatures. And she also instructed that these constitute a law. I mean, if I issued a press release about this case, which I would not do, but if I did, that's not a law, that's not a ruling, that's just me, even if I was the single judge or something on a case, if the three of us issued a press release, that's not a ruling. Yes, Judge Haynes, I agree, it's not a ruling. However, in this case, the reason why we filed this lawsuit is because of the results of the Secretary's actions. And the Secretary's actions are not limited to just issuing a press release. Issuing the press release was the first step. But the second step, which also is stated in the record, is that the Secretary notified counties and informed counties and asked them to notify voters that their applications were incomplete. In other words, what the Secretary did was to notify the voters themselves and the county officials that the applications were incomplete and notify the county officials that they essentially had to reject those applications. And because of that, she is directly connected to the enforcement of the wet signature rule, whether the wet signature rule arises because of her instructions alone or whether it's mandated by Texas law. The reason this lawsuit came about is because the counties followed her directive. And as we allege, they followed her directive. And because of that, voters had their applications rejected. And this is not only part of the record on page five of the brief, the Secretary states that they did indeed advise counties that received a third party app that included the image signatures to notify voters that the applications were incomplete. And in terms of how this fits into the explanation. So now that she said she can't enforce it, what's stopping Travis County from taking the online stuff? That sounds like you won in a way by her saying that. I mean, I'm just wondering why that's not the position you take it. Well, Judge Haynes, we would disagree with the secretary's position that she cannot enforce this provision. There are actually multiple connectors between the secretary and the enforcement of the wet signature rule. I'll start with with the broader connector, which is that the secretary is under a Section 31.03 of the Texas Election Code to obtain uniformity and to obtain and maintain uniformity in the application and interpretation of election laws. And the statute specifically says the secretary shall obtain and maintain uniformity in the application and interpretation of election laws. That is a mandate to insert herself in the interpretation of these laws, which is what she did. She was acting pursuant to that statutory authority. But the problem is, if that were enough to give her power over all the election laws, we wouldn't need these, I don't know, dozen of cases or something we've had recently where each case has analyzed each statute provision by provision. If it were simply that she's the queen, we could end there and wouldn't need all these cases. But it seems like our court has not said that she's the queen and that ends the debate on this subject. That'd be an easy ruling, but it hasn't been our ruling. So how can you explain that? That is correct, Judge Haynes, and this court in Texas Democratic Party v. Abbott expressly refused to consider whether Section 31.03 created a sufficient connection to enforcement. And the reason the court did not consider that is because the court relied on a different provision, which is actually applicable here. The court relied on Section 31.002, which provided the Secretary of State the authority to design absentee ballot application forms. And the reason I bring up that specific holding from Texas Democratic Party v. Abbott is that it demonstrates why some of these courts have not actually had to delve into and explore the reach of Section 31.003. And it's also true here because this case doesn't actually require the court to test the limits or the boundaries of the Ex parte Young Doctrine. The Secretary of State is under a similar duty to design voter registration application forms under Section 13.121A of the Texas Election Code. And she's also under a duty not just to design the forms, but to include information required by the Secretary of State in order to register. And this duty is substantively indistinguishable from the duty to design absentee ballot application forms that the court in Texas Democratic Party v. Abbott. But nobody is disputing that a signature is needed. What they're disputing is kind of how that signature gets from point A to point B. When I got this pen and I'm writing down, how does that get to you if you were the voter registrar? That's the question that seems to be at issue here, which is a little bit different from the form. The form doesn't know how that signature got on there. It's just a form. And y'all aren't disputing the signatures required. You're disputing how that signature, again, gets from my pen to the voter registrar's bucket. Well, Justin, in response to that, I would argue it's a little bit more similar than what you've described, because the information on the absentee ballot application form in in Texas Democratic Party v. Abbott was that at issue was a checkbox that indicated that voters were over the age of 65. The form itself doesn't indicate that voters are over the age of 65 other than that checkbox. And the same thing can be true for a voter registration application. In other words, other than an instruction that the voter must print and sign the form or an instruction that the voter must send an original copy of the form or any similar instruction that suggests that the voter may have to sign with a wet signature, not an electronic signature, and cannot fill this out electronically. Those are similar restrictions. Those are constraints on local county clerks or registrars. And it's the fact the constraint on the registrar is what creates the sufficient connection to enforcement that satisfies Ex parte Young. It's the same type of constraint that designing the form and being able to put instructions on the form and being able to put qualifications or conditions on the form, the same type of And that's why this court in Abbott found that the secretary had a sufficient connection to enforcement. And that's also why this court in Abbott did not decide whether the secretary's duty to obtain and maintain uniformity was sufficient by itself. And that is to go back to Judge Haynes original question at the outset of your argument. What is help me clarify for me. What is the source? What is the positive law sort of anchor for the wet signature rule? Is it the press release alone? Is it something else? What is the kind of the origin of this wet signature rule, as you call it? So that is that is in dispute. The secretary claims that the origin of the wet signature rule is actually in Texas election code. And that's why we have challenged the provision of the election code that the secretary claims imposes this rule as an alternative. So our lawsuit actually challenges that the election code. And in order to respond to the secretary's argument that it's actually required by the code. Your complaint sites, the, the, the advisory, the press release is that sort of what you point to as kind of the source of the rule. Well, the complaint sites, both the, the press release and the third section 13.02. So in the alternative, it cites both. But to respond to your question specifically, Judge Rowley, yes, that the complaint sites to the press release as well on this and, and secretary's actions and ensuring that local county clerks reject these voter registration applications. And what so whether the rule comes from only the secretary's rule or the secretary's directive and and not from the election code or whether it comes from the election code. The fact is that there is now a practice among a uniform practice among a Texas counties to reject applications that lack a wet signature and the and the reason that is in place is because of the secretary of state's directives. And as we have alleged, the counties followed that directive. And that's why the secretary is sufficiently connected to the enforcement of this provision. But even if, even if we don't get to that, the broader justifications for enforcement, we still have the secretary's design of the voter registration application form, which is substantively indistinguishable from the same duty, the design of the absentee ballot. I'm not understanding how the form itself. Oh, I'm sorry. How the form itself says wet signature. The form itself just says signature, right? That is correct, Your Honor. It's been a long time since I've signed the form, but I just said signature, I think. Before we had the internet. Yes, that is correct, Judge Haynes, that the form itself does not say wet signature. And I will preface this by saying that the actual form in itself is not in the record. To the extent that the court wants to take judicial notice of how the form is completed and what the secretary's website states, there's at least some instruction that tells the voter to print out and to print and sign the form or print and submit the form, which suggests, very strongly suggests that there is a wet signature requirement or the voter must sign it by hand with a wet ink signature. And again, I will caution that the form itself is not in the record. Because this case is at the complaints, this is the motion to dismiss stage. And we haven't had an opportunity to present our full evidence that we would were this case to proceed to trial. So in essence, there are two potential avenues and even more that we've identified in a brief that connect the secretary to the enforcement of this wet signature rule. So in addition to the directive to counties in the press release and in direct communications, you also have the design of the application form. You also have the design or the duty to design training materials for volunteer deputy registrars, which is also set forth in our brief, Your Honor. There are a number of provisions that can tie the secretary to the enforcement of the wet signature rule. And these, these provisions... The form itself that ties her, wouldn't you have needed to put that somewhere in the record? I mean, because she challenged and so then you have to show that there is  So, I mean, if the form itself is the key, which I understand she creates, then I don't see why the form is not in the record. The form is not in the record. And to be candid with the court, the form is not in the record because the form was not one of the bases for the district court's opinion, nor was it at issue below. But we would argue that this court does have the discretion and can acknowledge the secretary's duty to prepare that form. Just like the court in Texas Democratic Party v. Abbott. In that case, I will note that the parties did not raise the argument under Section 31.002. The parties did not cite the secretary's design of the absentee ballot application form as a connection to enforcement. The court, however, was able to rely on that provision. And the reason the court was able to rely on that provision is because the argument, the fundamental argument is still the same. The secretary has the authority to enforce this provision, and the secretary is enforcing this provision. And whether we cite 31.003, which is the duty. What about the Judge Graves question to Mr. Frederick about the Attorney General? I mean, I don't know. So that the Attorney General is the one who would have had to enforce it. How do you address that? So that, I'll address that, two responses to that, Judge Haynes. First, the Judge Graves question, I believe, assumes that the design of the form is not enforcement of itself. And this court held in Abbott that the design of the form is enforcement. But assuming that it wasn't for some reason, the actual litigation by the Attorney General is the last step in the enforcement. When the Secretary of State is carrying out her duties under section 31.003 to obtain uniformity in the interpretation application of the election code, the enforcement starts much earlier. The enforcement can take multiple forms. The election code gives the Secretary a variety of tools with which she can enforce the election code, in which she can enforce and implement her interpretation or uniform interpretation of the election code. The lawsuit by the Attorney General is one of them. But that is a last resort. The Secretary takes a number of different steps as... Let's assume, Argumando, that the form itself just says signature, but it was her predecessor's press release and so forth that got everybody scared. And so now, let's say Travis County runs out there and starts doing an online sign-up. What could she do to stop that, besides say, please don't do that anymore? What else could she do? Well, section 31.002 instructs that the Secretary may issue directives, detailed written guidance. The Secretary can do what she did before, what her predecessor did before the 2018 election, which is reach out to the counties directly. And the Secretary, under section 31.005, can also file or request that the Attorney General file a lawsuit and seek mandamus relief. So the Secretary has a number of tools at her disposal. The Secretary is not disconnected from the enforcement of this provision, simply because she does not have to get to the last resort. But can't anybody report to... Couldn't a citizen of Travis County report it to the Attorney General and the Attorney General pursue something? Yes, a citizen can potentially report a violation to the Attorney General. Reporting to the Attorney General doesn't strike me as something that's limited to the Secretary of State. It's not limited to the Secretary of State, but it is part of the express authority given to the Secretary of State. In other words, the Secretary of State, under 31.005, is empowered to seek mandamus relief in order to protect the voting rights of the citizens of Texas. And that can take many different forms. The Secretary has used that, has utilized that provision in order to enforce the election code. And the Secretary has done that on a number of occasions, including recently in State v. Hollins, which is a case that was a state court case, which we have identified as just another example of the Secretary exercising that authority. But to be clear, there are a number of other examples... What did the Secretary do in that case? Did the Secretary go to the Attorney General and ask him to get a writ? The one you just gave in State v. Hollins? Yes. Yes, Judge Graves. The Secretary did. But in that decision... Do you know whether or not the Attorney General could refuse if the Secretary said, we need to enforce what I view as a violation of our election laws? And the Secretary presents that to the Attorney General. Could the Attorney General say, I will not prosecute or I will not pursue a writ? Would he have the discretion to refuse the Secretary? Judge Graves, I cannot endeavor into whether the Attorney General would have the authority to refuse. I think that's probably a question for the Secretary's counsel, for the Attorney General's counsel. So I cannot say one way or another. But I will mention... Well, he said he thinks the Attorney General could refuse. I will tell you, I couldn't find the answer. So that's why I'm asking both of you. But it may be neither here nor there. Go ahead with your argument. So I'm not presently aware of any authority that would allow the Attorney General to refuse. However, in the State v. Hollins case, one thing I will mention is that the case cites Section 31.005 as the source of law for that mandamus action. Quick question. Putting aside Ex parte Young, you also make the argument in your briefing here that the Civil Rights Act is an alternative way that the state's immunity was abrogated. And of course, it's briefed here. My question is, was it argued below? Was that raised below? Can you point me to where? Yes, it was raised below, Judge Willett. I don't have the specific record site at the ready, but the argument was raised below briefly. And the Secretary's brief actually acknowledges that the argument was raised below, but the District Court did not rely on that argument to issue its ruling. But it does provide an alternative basis, specifically with respect to the Civil Rights Claim under the materiality provision. This Court has already found that the Voting Rights Act abrogates sovereign immunity. The Civil Rights Act accomplishes the same purposes, specifically with respect to the materiality provision, accomplishes the same purposes. Indeed, the provision itself is part of a series of provisions that were meant to prevent literacy tests. And I'm sorry, but your time is up. So unless any of my colleagues has another question for you, we're going to go ahead and move on. But thank you for your argument. Thank you, Your Honor. Mr. Frederick, you have rebuttal. Thank you, and may it please the Court, that the press release in this case is not a rule and it's not a law. This Court held in TDP v. Abbott that a public statement alone cannot establish authority to enforce or likelihood of enforcement. And in Mi Familia Vota, this Court held that the power to promulgate a law is not the power to enforce it. So the press release cannot establish either step of the ex parte Young analysis. Neither can the responsibility to design forms. That's for two reasons. First, that argument is forfeited. It was not raised below. Second, it's not the right analysis in any case because here we have a specific official who's charged with enforcement and a different official is named as the defendant. In TDP v. Abbott, the challenged provision did not identify any official who enforced it. And so the Court had to look further to determine whether there was enforcement authority. This case is like City of Austin and the analysis ends at the first step. The problem with their case here is very similar to the problem in Mi Familia Vota. An injunction against the secretary simply won't get them the relief they want  will still be bound by the statute which says that the application must be in writing and signed by the applicant. And so if the Court says- It doesn't say how that signature gets from my desk to the voter registrar's office. So whether I could sign it on my desk and then PDF it into my computer and then send it to this third party that was collecting it and then they send it to the voter registrar, why doesn't that work? I just didn't sign it the way we did 20 years ago when we didn't have computers. Right, so there are two points on that. Two points on that. I think the first point is that section 13.002 does say the application must be submitted by personal delivery by mail or by telephonic facsimile machine. But the second point and really the more important one that's not on the merits is that application is going to the voter registrar. It's not going to the secretary. And so it's still the voter registrar's responsibility to determine whether it complies with the statutes and whether that voter is eligible. And so- If I fax to the voter registrar, how do they know how my signature got on there? Whether it was wet or how it got on that page because a fax is a fax. I agree with that. As I read the statutes, it says you sign it and you fax it. So, I mean, I think this just goes back a little bit more to the merits, which I don't want to spend too much of the court's time on, but there's no, this wet signature rule that they're positing. It's simply not there. The statute says what it says and the registrars enforce it. I want to also address my friend's statement that there are a range of tools available here. I think that really highlights the critical point. Assuming there are a range of tools available, which I disagree that there are enforcement tools, none of them have been used here. So even if they could meet the first step of Ex parte Young, they can't establish a demonstrated willingness to exercise the duty to enforce. And Hollins doesn't help them because it only proves the point. In Hollins, that's enforcement of a different statute in different circumstances. In City of Austin holds, that is no evidence of likely to enforce here. And so the absence of any such activity in this case only underscores the fact that there is no enforcement activity, no willingness to enforce. And it demonstrates that the secretary is entitled to sovereign immunity. The district court's denial of her motion to dismiss should be reversed. The court should instruct the district court to dismiss for lack of subject matter jurisdiction. Okay. Thank you. The case is now under submission.